IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BALFOUR BEATTY CONSTRUCTION, LLC and MILESTONE METALS, INC., <br><br>Plaintiffs,<br>V.<br><br>LIBERTY MUTUAL INSURANCE COMPANY,<br><br>Defendant. | § § § § § § § § § § § § |

CIVIL ACTION NO. 4:17-CV-02477

## ORDER

This case concerns the interpretation of an insurance contract. Plaintiffs Balfour Beatty Construction, LLC ("Balfour Beatty") and Milestone Metals, Inc. ("Milestone") sued Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") in Texas state court, and Liberty Mutual removed the case to this Court on the basis of diversity of citizenship. Plaintiffs have pleaded claims for breach of contract (Count One) and violations of Section 541 and Section 542 of the Texas Insurance Code (Count Two). Presently before the Court are Plaintiffs' Partial Motion for Summary Judgment [Doc. No. 11] and Liberty Mutual's Motion for Summary Judgment [Doc. No. 21]. For the reasons set forth below, the Court hereby grants Liberty Mutual's Motion for Summary Judgment on Plaintiffs' breach of contract claim. The Court denies Plaintiffs' Partial Motion for Summary Judgment.

1

I. Undisputed Facts

In October 2015, Milestone completed welding work near the 18th floor of Energy Center 5, an office building then under construction in Houston.[1] The work consisted of welding a two-inch plate onto the existing building. Several months later, Milestone learned that welding slag[2] from its operations had fallen down the side of the building and damaged the glass on windows below. Milestone had not installed the windows. The windows had to be replaced, and this case concerns who is obligated to pay for that replacement.[3]

With respect to the Energy Center 5 construction project, TCH Energy Corridor Venture, LLC ("Trammell Crow") was the developer. Balfour Beatty was the general contractor. Milestone was a subcontractor. Trammell Crow contracted with Balfour Beatty in July 2014. Balfour Beatty subcontracted with Milestone in August 2014.

The Trammell Crow–Balfour Beatty contract required Trammell Crow to acquire "builder's risk" insurance that would include the interests of Balfour Beatty and subcontractors in the project. Trammell Crow procured such insurance from Liberty Mutual (the "Insurance Policy"). The Insurance Policy contains the following coverage provisions:

---

[1] The facts described in this section are uncontested. Plaintiffs stated these facts in their Partial Motion for Summary Judgment, Doc. No. 11 at 3–7, and Liberty Mutual "does not dispute" these particular facts, at least for the purposes of responding to the Partial Motion for Summary Judgment. Doc. No. 14 at 5.
[2] Slag consists of "the molten metal particles ejected in the process of welding." *See Evanston Ins. Co. v. Adkins*, No. 3:05-CV-2068-L, 2006 WL 2848054, at *7 (N.D. Tex. Oct. 4, 2006).
[3] Liberty Mutual has raised objections to the affidavit of Milestone Safety Director Roman Lozano, argued that Plaintiffs have not shown how "their respective interests may appear" so as to qualify as additional insureds, and argued that Plaintiffs have not yet established any damages figure. The Court has not found it necessary to rule upon Lozano's affidavit because its ruling on the pending motions would be the same whether it granted or denied Liberty Mutual's objections. *See infra* note 9. Instead, the Court has recited the facts that the parties have all agreed to in their briefing. The Court's grant of summary judgment in favor of Liberty Mutual today moots Liberty Mutual's other objections and arguments.

**PROPERTY COVERED**

"We" cover the following property unless the property is excluded or subject to limitations.

**Course of Construction --**

1. **Coverage** -- "We" cover direct physical loss or damage caused by a covered peril to "buildings or structures" while in the course of construction, erection, or fabrication.[4]

. . . .

**PERILS COVERED**

"We" cover risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded.

After learning of the window damage, Trammell Crow, Balfour Beatty, and Milestone tendered a claim to Liberty Mutual, who denied the claim. As the basis for its denial, Liberty Mutual cited the following exclusion in the Insurance Policy:

**PERILS EXCLUDED**

. . . .

2. "We" do not pay for loss or damage that is caused by or results from one or more of the following:

. . . .

c. **Defects, Errors, And Omissions --**

1) <u>"We" do not pay for loss or damage</u> consisting of, <u>caused by, or resulting from an act</u>, defect, error, or omission (negligent or not) <u>relating to</u>:

a) design, specifications, <u>construction</u>, materials, <u>or workmanship</u>;

---

[4] No party disputes that Energy Center 5 was covered under the Insurance Policy.

3

> b) planning, zoning, development, siting, surveying, grading, or compaction; <u>or</u>
> c) maintenance, <u>installation</u>, renovation, remodeling, or repair.
>
> <u>But if an act, defect, error, or omission as described above results in a covered peril, "we" do cover the loss or damage caused by that covered peril.</u>

(Emphasis added). The Court will refer to section 2(c)(1), except for the final sentence, as the "Defects, Errors, and Omissions" clause. The Court will refer to the final sentence ("But if an act, defect, error, or omission as described above results in a covered peril, 'we' do cover the loss or damage caused by that covered peril.") as the "exception" to the Defects, Errors, and Omissions clause.[5]

## II. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "interpretation of an insurance policy is a question of law for a court to determine." *Am. Home Assurance Co. v. Cat Tech L.L.C.*, 660 F.3d 216, 220 (5th Cir. 2011) (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel, L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010)).

## III. The Insurance Policy

Since the Insurance Policy broadly covers "risks of direct physical loss or damage unless the loss is limited or caused by a peril that is excluded," the dispute in this case centers around an

---

[5] As discussed below, Texas law requires each contract to be interpreted based on its own language rather than allegedly similar language or clauses found in other contracts. The Court remains mindful of these principles of interpretation, so it will not refer to the exception as an "ensuing loss" clause (a common clause in other insurance contracts) or treat the exception and other clauses containing the words "ensuing loss" interchangeably.

4

exclusion from that broad coverage and an exception from the exclusion.[6] It is the Defects, Errors, and Omissions exclusion—the exclusion on which Liberty Mutual based its denial of coverage—that is at issue. Plaintiffs argue that the Defects, Errors, and Omissions exclusion does not exclude their claim. Even if it did exclude their claim, according to Plaintiffs, the exception to the exclusion would reinstate coverage. This Court reluctantly disagrees. The Court finds that the Defects, Errors, and Omissions clause excludes coverage for Plaintiffs' claim and that the exception does not reinstate coverage. Liberty Mutual's denial of Plaintiffs' claim was accordingly proper, and Liberty Mutual is entitled to summary judgment on Plaintiffs' breach of contract claim.

A. Interpreting Insurance Contracts

The parties agree that Texas law governs this diversity suit. "Texas law provides that insurance policies are construed according to common principles governing the construction of contracts . . . ." *Id.*

Under Texas law, "[i]nsurance policy interpretation principles emphasize a policy's plain language in determining its intended coverage." *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 131 (Tex. 2010). Courts first "look at the language of the policy because we presume parties intend what the words of their contract say." *Id.* at 126. "The parties' intent is governed by what they said in the insurance contract, not by what one side or the other alleges they intended to say but did not." *Id.* at 127; *see also Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 746 (Tex. 2006). "The policy's terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Gilbert*, 327 S.W.3d at 126. "For more than a century" the Supreme Court of Texas "has held that in

---

[6] Liberty Mutual's argument takes as its starting point the proposition: "Even if the damage to the windows and glass panels caused by Milestone's welding slag is 'direct physical loss or damage' . . . ." Doc. No. 14 at 4.

5

construing insurance policies 'where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.'" *Fiess*, 202 S.W.3d at 753 (quoting *E. Tex. Fire Ins. Co. v. Kempner*, 27 S.W. 122, 122 (Tex. 1894)). *But see Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 202 (Tex. 2004) (construing an exclusion for any "[b]odily injury . . . due to rendering or failure to render any professional service" to apply "only when the insured has breached the standard of care in rendering those professional services").

Texas has a "long-standing legal rule that insurance policies must be construed one policy at a time." *Fiess*, 202 S.W.3d at 747. "[E]ach policy must be interpreted according to its own specific provisions and coverages." *Gilbert*, 327 S.W.3d at 129 n.7.

"An insurance policy is only ambiguous if its plain language is amenable to more than one reasonable interpretation." *Nautilus Ins. Co. v. Country Oaks Apartments Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009). "Where an ambiguity involves an exclusionary provision of an insurance policy," the Court "must adopt the construction . . . urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Gilbert*, 327 S.W.3d at 133 (quoting *Balandran v. Safeco Ins. Co. of Am.*, 972 S.W.2d 738, 741 (Tex. 1998)) (internal quotations omitted); *see also Nautilus*, 566 F.3d at 455 ("If an insurance contract is ambiguous, courts must adopt the construction favored by the insured."). "But an ambiguity does not exist simply because the parties interpret a policy differently." *Gilbert*, 327 S.W.3d at 133. "If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Id.* "When an exclusion is clear and unambiguous," courts "interpret it according to its plain meaning, and give no deference to the insured's interpretation." *Cat Tech L.L.C.*, 660 F.3d at 220. "Where the

language of a contract is clear, a court's inquiry should begin and end with the policy's language." *Nautilus*, 566 F.3d at 455.

"Texas law does not recognize coverage because of 'reasonable expectation' of the insured." *Constitution State Ins. Co. v. Iso-Tex Inc.*, 61 F.3d 405, 410 n.4 (5th Cir. 1995); *see also Nautilus*, 566 F.3d at 455, 458 n.4 ("Texas law does not look to the 'reasonable expectations' of the insured."); *Noble Energy, Inc. v. Bituminous Cas. Co.*, 529 F.3d 642, 648 (5th Cir. 2008) (stating that "under Texas law, the reasonable expectations of the insured are not to be considered when the policy language is unambiguous").

B. The Defects, Errors, and Omissions Clause

Liberty Mutual maintains that the unambiguous, plain language of the Defects, Errors, and Omissions clause excludes coverage for Plaintiffs' claim. Liberty Mutual points to the language excluding claims for "loss or damage . . . caused by, or resulting from an act . . . or omission (negligent or not) relating to . . . construction . . . or workmanship . . . or . . . installation." Plaintiffs contend that the Defects, Errors, and Omissions clause only applies to repairing or replacing an insured's *own* work. According to Plaintiffs, if an insured's work damages other parts of the construction site on which the insured was not working, then the Defects, Errors, and Omissions exclusion does not apply. Texas law governing the interpretation of insurance contracts, however, compels a finding in favor of Liberty Mutual, and the Court accordingly finds that the Defects, Errors, and Omissions clause excludes coverage.

Liberty Mutual correctly states that the plain, unambiguous language of the Insurance Policy excludes the claim in this case. The Insurance Policy excludes claims for "damage . . . caused by, or resulting from an act . . . or omission (negligent or not) relating to . . . construction." This Court is bound by well-settled Texas law providing that the plain, unambiguous language of

7

insurance contracts controls. *See Gilbert*, 327 S.W.3d at 129 n.8 (citing a host of cases and commentators opining on what a certain clause is "generally understood and interpreted by the courts to mean" or what the clause "refers to" and then, in contrast to these cases and commentators, applying the clause according to its plain meaning); *see also Fiess*, 202 S.W.3d at 746 ("As with any other contract, the parties' intent is governed by what they said, not by what they *intended* to say but did not.").

"The policy's terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Gilbert*, 327 S.W.3d at 126. There is no reason to believe that the word "construction" was meant in a technical or different sense. An ordinary and generally-accepted meaning of "construction" is "the process . . . of constructing something." *Merriam-Webster's Collegiate Dictionary* 268 (11th ed. 2007). The claim in this case is for damage caused by an act relating to construction, i.e., the process of constructing something.[7] It is therefore excluded.

Plaintiffs insist that the purpose of procuring builder's risk insurance is to cover claims like the one at issue. Even if that is true, it is unavailing to Plaintiffs in light of what this specific contract actually says. The language of the specific contract controls despite what a certain type of policy is purportedly generally taken to cover. *See Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 216–17 (5th Cir. 2009). In *JHP Development*, for example, the Fifth Circuit highlighted the distinction between Texas caselaw and a decision of the South Carolina Supreme Court that "relied on the purpose of commercial general liability insurance." *Id.* at 216. "Under Texas law," the Fifth Circuit stated, "whether there is coverage in a particular case depends on the language contained in the policy at issue; the mere fact that a policy is designated as a 'commercial general

---

[7] Since Milestone was welding a steel plate onto the existing building, the claim is also potentially for damage caused by an act relating to installation.

liability' insurance policy is not grounds for overlooking the actual language of that policy." *Id.* The Fifth Circuit continued: "The Texas Supreme Court has warned that such 'preconceived notion[s] . . . must yield to the policy's actual language,' and that 'coverage for [business risks] depends, as it always has, on the policy's language, and thus is subject to change when the terms of the policy change.'" *Id.* at 216–17 (quoting *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 13–14 (Tex. 2007) (brackets added by the Fifth Circuit)). Instead of looking to the genre of insurance policy and any associated preconceived notions, the Fifth Circuit applied a "plain reading of the language" of the exclusion and found that it did not apply. *Id.* at 215, 218.

Plaintiffs in this case argue that the Defects, Errors, and Omissions clause only excludes claims based on defects or damage to Plaintiffs' own work. Plaintiffs cite *U.S. Industries, Inc. v. Aetna Casualty & Surety Co.*, yet the exclusion in that case applied to "damage caused by or resulting from faulty workmanship." 690 F.2d 459, 462 (5th Cir. 1982). The Insurance Policy in this case has different language.[8] The exclusion in the Insurance Policy broadly applies to "damage . . . caused by, or resulting from an act . . . or omission (negligent or not) relating to . . . construction."

---

[8] Plaintiffs also rely on *North American Shipbuilding, Inc. v. Southern Marine & Aviation Underwriting, Inc.*, but *North American Shipbuilding* does not support Plaintiffs' claims in this case. *See* 930 S.W.2d 829 (Tex. App.— Houston [1st Dist.] 1996, no writ). *North American Shipbuilding* construed a policy insuring "against all risks of physical loss of or damage to the Vessel . . . except as hereinafter provided." *Id.* at 831. The court held that faulty workmanship in and of itself did not qualify as "physical loss of or damage to the Vessel." *Id.* at 833–34. A subsequent loss event caused by faulty workmanship would qualify as "physical loss of or damage to the Vessel," but the original faulty workmanship would not be covered. *Id.* Plaintiffs evidently believe *North American Shipbuilding* shows that, in an "all risks policy" (the type of policy that Plaintiffs allege the Insurance Policy is), faulty workmanship is not covered while subsequent loss events caused by faulty workmanship (or the insured's negligence) are. The facts of the case at bar, however, make the application of *North American Shipbuilding* somewhat dubious. This is not a case of faulty workmanship leading to a second, separate loss event (in fact, the Defects, Errors, and Omissions exclusion applies whether the act was "negligent or not," so there need not even be any fault or negligence). Under the current record, there was no faulty workmanship like the poor-quality welds in *North American Shipbuilding* or twisted vessel hull in *Trinity Industries* (a case quoted at length by *North American Shipbuilding*) at all. *See id.* at 831; *Trinity Indus., Inc. v. Ins. Co. of N. Am.*, 916 F.2d 267, 268 (5th Cir. 1990). Rather, there was a single loss event—the damaged windows. The damage was caused by an act (whether negligent or not) relating to construction, and that loss is accordingly excluded.

The cases cited by Plaintiffs demonstrate that parties can and do limit the exclusion to defects in the insured's own work when that is their intent. The parties here simply did not draft their contract that way. *See CenterPoint Energy Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*, No. 09–2107, 2010 WL 11468795, at *1 (S.D. Tex. Sept. 2, 2010) (excluding, under the heading **"COST OF MAKING GOOD"**: "Faulty or defective workmanship, supplies or material" and "Fault, defect, error, deficiency or omission in design, plan or specification . . . Unless direct physical loss or damage by an insured peril ensues and then this Policy will cover for such ensuing loss or damage only"); *Nat'l Fire Ins. Co. of Pittsburgh, Pa. v. Valero Energy Corp.*, 777 S.W.2d 501, 505 (Tex. App.—Corpus Christi 1989, writ denied) (excluding the "cost of making good faulty workmanship, materials, construction or design, but this exclusion shall not be deemed to exclude physical loss or damage arising as a consequence of faulty workmanship, material, construction or design . . . ."); *Bartram, LLC v. Landmark Am. Ins. Co.*, 864 F. Supp. 2d 1229, 1232 (N.D. Fla. 2012) (excluding "loss or damage caused by or resulting from: . . . [d]efective materials, faulty workmanship, error, omission or deficiency in designs, plans or specifications. But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage.").

There are still other ways of stating that an exclusion only excludes loss or damage to the insured's own work, for instance by including "your work" language. *See, e.g., Cat Tech*, 660 F.3d at 219 (excluding "'[p]roperty damage' to 'your work' arising out of it or any part of it . . . ."); *Wilshire Ins. Co. v. RJT Constr., LLC*, 581 F.3d 222, 226 (5th Cir. 2009) (same); *JHP Dev., Inc.*, 557 F.3d at 211 (excluding damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it").

10

In order to find that the Insurance Policy provided coverage, the Court would need to read in language that narrowed the exclusion to cases where the loss consisted of the "cost of making good" the insured's faulty work or where damage occurred to "your work." Another alternative would require the Court to read in language along the lines of "soundness of" before "construction"—so the Defects, Errors, and Omissions Clause would exclude "damage . . . caused by, or resulting from an act, defect, error, or omission (negligent or not) relating to . . . design, specifications, [soundness of] construction, materials, or workmanship . . . ."—and thereby mute the effect of adding the word "construction." This the Court may not do. The Supreme Court of Texas has long "held that in construing insurance policies 'where the language is plain and unambiguous, courts must enforce the contract as made by the parties, and cannot make a new contract for them, nor change that which they have made under the guise of construction.'" *Fiess*, 202 S.W.3d at 753 (quoting *Kempner*, 27 S.W. at 122). "Where the language of a contract is clear, a court's inquiry should begin and end with the policy's language." *Nautilus*, 566 F.3d at 455. The language of the Defects, Errors, and Omissions exclusion is clear, and the Court is duty bound to enforce it as written.

At oral argument and in a footnote within their briefing, Plaintiffs raised the contention that wind contributed to the loss in this case by blowing the falling slag into the building's windows.[9] Plaintiffs contend that the Defects, Errors, and Omissions clause "*only* applies when the insured's defective work was the sole proximate cause of the loss" and that "wind contributed significantly to the damage to the windows . . . ."[10] Plaintiffs cite no authority for this contention.

---

[9] The Court has previously noted Liberty Mutual's objections to the affidavit of Roman Lozano. *See supra* note 3. Even if the Court assumes *arguendo* that Lozano's affidavit is admissible, the affidavit at best implies that high winds were a factor in causing the loss—i.e., that while the slag was free falling, wind blew it into the windows (as opposed to a scenario where the slag dropped directly on the windows as a result of the welding). Lozano Aff. 1. As the Court will explain, though, any role the wind might have played in causing the loss event cannot help Plaintiffs' case.

[10] Doc. No. 11 at 8 (emphasis in the original).

If Plaintiffs mean to invoke the concurrent causation doctrine, that doctrine is unavailing. Even if the wind was a "concurrent cause"—a cause that combined with Milestone's welding operations to cause the damage in this case—the exclusion would still be triggered. The Supreme Court of Texas has summarized the relevant doctrines:

> Texas courts and the Fifth Circuit applying Texas law have recognized a distinction between cases involving "separate and independent" causation and "concurrent" causation when both covered . . . and excluded events cause a plaintiff's injuries. In cases involving separate and independent causation, the covered event and the excluded event each independently cause the plaintiff's injury, and the insurer must provide coverage despite the exclusion. *In cases involving concurrent causation, the excluded and covered events combine to cause the plaintiff's injuries. Because the two causes cannot be separated, the exclusion is triggered.*

*Utica*, 141 S.W.3d at 204 (internal citations omitted) (emphasis added).[11] Wind alone, of course, would not have independently caused any slag damage to the building's windows, so the wind is not a "separate and independent" cause. Rather, if wind was involved at all, it was a concurrent cause: the excluded cause (the act relating to construction) and covered cause (wind) combined to cause the damage. *See Nay Co. v. Navigators Specialty Ins. Co.*, No. 3:16-CV-02675-N, 2018 WL 4026346, at *4 (N.D. Tex. June 12, 2018) (vacated by agreed motion of the parties) (citing *Utica* and holding that "it appears that both the wind and the removal of the guy wires combined to cause the grain elevator's collapse, thus triggering the Policy's Defects Exclusion"). Assuming *arguendo* that wind contributed significantly to the window damage, the Defects, Errors, and Omissions exclusion would accordingly still be triggered.

---

[11] *Cf. All Saints Catholic Church v. United Nat'l Ins. Co.*, 257 S.W.3d 800, 802 (Tex. App.—Dallas 2008, no pet.) ("Under the doctrine of concurrent causation, where covered and non-covered perils combine to create a loss, the insured is entitled to recover only that portion of the damage caused solely by the covered peril. The doctrine of concurrent causation is not an affirmative defense or an avoidance issue; rather, it is a rule embodying the basic principle that insureds are not entitled to recover under their insurance policies unless they prove their damage is covered by the policy." (internal citations omitted)). It follows that if no part of the damage was caused solely by the covered peril, the insured is not entitled to recover.

In sum, the Court finds that the Defects, Errors, and Omissions exclusion applies based on its plain language and excludes Plaintiffs' claim.

C. The Exception to the Defects, Errors, and Omissions Clause

Plaintiffs maintain that even if the Defects, Errors, and Omissions clause excludes coverage for their claim, the following exception effectively reinstates coverage: "But if an act, defect, error, or omission as described above results in a covered peril, 'we' do cover the loss or damage caused by that covered peril." This Court cannot agree with Plaintiffs' position. The exception to the Defects, Errors, and Omissions exclusion does not reinstate coverage in this case, and summary judgment in favor of Liberty Mutual on Plaintiffs' breach of contract claim is warranted.

Under Plaintiffs' reading of the Insurance Policy, the exception would swallow the exclusion.[12] The decision of the Supreme Court of Texas in *Fiess* rejected this type of reading. In *Fiess*, the exclusion stated: "We do not cover loss caused by . . . mold . . . ." 202 S.W.3d at 746. The exception to the exclusion stated: "We do cover ensuing loss caused by . . . water damage . . . if the loss would otherwise be covered under this policy." *Id.* The difficulty facing the Supreme Court was whether mold contamination could qualify as an "ensuing loss caused by . . . water damage," despite the express exclusion for mold. The Supreme Court held that it could not, stating that "few ordinary people would imagine that [the ensuing loss clause] changes the meaning of the first sentence to read 'We *do too* cover loss caused by mold.'" *Id.* at 747 (emphasis in the original). While the exception in the Insurance Policy does not contain the words "ensuing loss" (although both parties nonetheless refer to it as an "ensuing loss" clause), the principle that the exception

---

[12] Plaintiffs would have the Court read the exception to say: "if a negligent act, error or omission relating to the insured's welding operations results in slag damage, we *do* cover the damage caused by the slag." Doc. No. 23 at 2. Despite the Insurance Policy's language stating that the "act, defect, error, or omission" can be "negligent or not," Plaintiffs continue to read in a negligence requirement that the Insurance Policy expressly rejects.

13

ordinarily will not be taken to negate or swallow the exclusion is still relevant. Few ordinary people would imagine that the exception changes the meaning of the exclusion to read "We *do too* cover loss . . . caused by, or resulting from an act . . . or omission (negligent or not) relating to . . . construction."

There is only one instance of loss or damage in this case: the damage to the windows. The language of the exception, however, suggests that there needs to be at least two loss events. Parsing the exclusion, we find: "But if an act, defect, error, or omission as described above"—that is, an excluded peril—"*results in* a covered peril," then the loss or damage caused by the covered peril is covered (emphasis added). The language, then, calls for (1) an excluded peril that (2) "results in" a covered peril. Since a peril cannot be simultaneously excluded and covered, the clause must be referring to two separate perils, one excluded and one covered. The Court finds that the "results in" language is not ambiguous and is capable of being given a definite meaning, although the Court acknowledges that there is a recent decision, albeit vacated pursuant to an agreed motion of the parties, reaching the contrary conclusion. *See Nay*, 2018 WL 4026346, at *4 (finding a nearly identical exception ambiguous "[b]ecause the phrase 'results in' is susceptible to more than one interpretation"). In this case, there is only the excluded peril, namely the act relating to construction. Liberty Mutual suggests an apt example of when there might be a resulted-in, covered peril. If "an act, defect, error, or omission (negligent or not) relating to . . . construction" caused holes in the windows, and a subsequent rainstorm caused water to enter through the holes and damage the interior finishes, then there would be an excluded peril (the act relating to construction) resulting in a covered peril (water entering through the holes and damaging the interior).

14

Plaintiffs rely on *Bartram* to explain their theory, but *Bartram* in reality illuminates why Liberty Mutual prevails. In *Bartram*, faulty workmanship led to water intrusion, and the water damaged exterior and interior finishes, wood sheathing, framing, drywall ceilings, and stuccoed walls. 864 F. Supp. 2d at 1233. The relevant policies excluded "loss or damage caused by or resulting from: . . . [d]efective materials, *faulty workmanship*, error, omission or deficiency in designs, plans or specifications." *Id.* at 1232 (emphasis added). The *Bartram* parties agreed that the faulty-workmanship exclusion applied, but they disagreed over whether the following exception applied: "But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage." *Id.* at 1231–32. The *Bartram* court concluded that the exception applied. *Id.* at 1235. The court held that the cost of repairing the faulty workmanship itself was not covered due to the exclusion, but the damage from resulting water intrusion was covered under the ensuing loss clause. *Id.*; *cf. Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.*, 219 F.3d 501, 505–06 (5th Cir. 2000) (construing an exclusion for "faulty workmanship, material, construction, or design from any cause, unless physical damage not excluded by this Policy results" to require "damage that is different in kind" in order to trigger the resulting-damage exception). *Bartram*, then, is a real-world example of Liberty Mutual's hypothetical. The case shows how the excluded loss remains excluded while a second, resulting loss falls within the policy's coverage. In this case, by contrast, there is only one loss, the excluded loss (window damage) caused by "an act, defect, error, or omission (negligent or not) relating to . . . construction."

Plaintiffs further contend that Liberty Mutual's interpretation "renders the policy largely illusory for many of the risks one would expect to be insured under a builder's risk policy."[13] Plaintiffs' contention finds support in *Nay*, which found that an insurance company's interpretation

---

[13] Doc. No. 23 at 5.

15

of a nearly identical exception "would render coverage under the Policy largely illusory." *See* 2018 WL 4026346, at *5. In *Nay*, the court first found that a nearly identical Defects, Errors, and Omissions exclusion applied where a subcontractor removed or slackened guy wires attached to a grain elevator that was under construction, causing the grain elevator to fall over in the wind. *Id.* at *1, *4. The court then found that the exception reinstated coverage for two reasons. *Id.* at *4. First, as mentioned above, the court found the "results in" language ambiguous, allowing the insured's interpretation to prevail as long as it was reasonable. *Id.* Second, the court found that the policy's protections would be "largely illusory" under the insurance company's interpretation. *Id.* at *5. Although the policy "purports to insure Nay against damages caused by Nay's construction-related activities," according to the court, "the Defects Exclusion precludes coverage for damage arising from nearly all imaginable actions remotely related to construction activities." *Id.*

While this Court understands the *Nay* court's reasoning on the illusory-coverage issue, it finds that the result does not align with the dictates of the Fifth Circuit. Even under Liberty Mutual's interpretation, the Insurance Policy still covers certain risks. For example, Plaintiffs evidently admit that the Defects, Errors, and Omissions exclusion would not exclude certain acts of nature or "Act[s] of God."[14] "Texas disfavors constructions of insurance contracts that render *all* coverage illusory." *Northfield Ins. Co. v. Herrera*, No. 17-51080, 2018 WL 5288958, at *5 (5th Cir. Oct. 24, 2018) (emphasis in the original). More to the point, the Fifth Circuit has held that "when an insurance policy will provide coverage for other claims, Texas courts are unlikely to deem the policy illusory." *Id.* Here, both sides concede that the Insurance Policy will provide

---

[14] Plaintiffs argue: "Liberty's interpretation of the exclusion removes from coverage any loss or damage that is not a naturally occurring event – i.e. an Act of God." Doc. No. 11 at 13. In other filings, Plaintiffs state: "according to Liberty, the Policy is a no-risk policy; or, a policy that applies only to Acts of God." Doc. No. 17 at 11; Doc. No. 23 at 3.

coverage for other claims. The Insurance Policy is accordingly not illusory;[15] it is merely more limited than Plaintiffs may have expected, and the Supreme Court of Texas has held that the parties' expectations do not govern. *See Fiess*, 202 S.W.3d at 746.

IV. Conclusion

Unfortunately for Plaintiffs, "Texas law does not recognize coverage because of 'reasonable expectation' of the insured." *Iso-Tex Inc.*, 61 F.3d at 410 n.4; *see also Nautilus*, 566 F.3d at 455, 458 n.4; *Noble Energy*, 529 F.3d at 648. For the reasons stated above, the Court finds that Liberty Mutual did not breach the Insurance Policy by denying coverage. The Court hereby grants Liberty Mutual's Motion for Summary Judgment on Plaintiffs' breach of contract claim [Doc. No. 21]. Liberty Mutual has not moved for summary judgment on Plaintiffs' claims for violations of Section 541 and Section 542 of the Texas Insurance Code, and those claims remain pending. The Court denies Plaintiffs' Partial Motion for Summary Judgment [Doc. No. 11].

Signed at Houston, Texas, on this 28 day of December, 2018.

ANDREW S. HANEN
UNITED STATES DISTRICT JUDGE

---

[15] Plaintiffs again cite *North American Shipbuilding* for its quotation of *Trinity Industries* stating: "If an all risks policy did not cover accidents resulting from such negligence [i.e., separate accidents resulting from faulty workmanship], then perhaps it would become a no risk policy . . . ." *See* 930 S.W.2d at 833 (quoting 916 F.2d at 270). As stated above, in this case there was no antecedent faulty workmanship that led to a separate accident, so the *North American Shipbuilding* analysis is inapplicable. Moreover, if Plaintiffs mean to say that finding certain limitations within a builder's risk policy can threaten to turn the policy into a "no risk policy," that argument does not apply to the facts of this case, where certain risks, including acts of nature, are still covered.